Thank you, Your Honor. I'd like to reserve half of my time for rebuttal. Keep your eye on the clock. Thank you. This Court in Standard Insurance v. Morrison held that the control of deferential clauses in insurance contracts is reserved to the states and is not preempted by ERISA. We have here a MetLife contract in which the deferential clause was specifically ordered removed by the Insurance Commissioner of California, which is almost identical to the facts in Standard Insurance v. Morrison. As a result of which, we have a plan document, which is rather confusing, but maybe it gives some discretion to the insurer, maybe it doesn't. But we have an insurance contract which, by rule of the California Insurance Commissioner, cannot have a discretionary clause in it. And the Commissioner cited this contract form by number in his order that the discretionary clause had to go. So if a plan can restore discretion after the Insurance Commissioner has removed it, then ERISA is in fact preempting state insurance law at this point. And Justice O'Scanlan in Standard Insurance v. Morrison, for very good reasons, held that ERISA does not preempt state insurance law at this point. So I think that really is the beginning and ending of whether or not there can be discretion in this case. I'm trying to understand what your argument is with respect to MetLife and how long the limitations period should be, and whether you're arguing that your client's psychiatric disabling condition was caused by physical or attributable to a physical limitation, therefore, there was an incorrect assessment, or are you arguing that MetLife unreasonably failed to recognize that Ms. Lee had a physical disabling condition? Which of the two are you arguing? We believe that what she had is a combined physical and psychiatric condition. I mean, she had a cervical fusion. That's not a mental condition. Cervical fusion is obviously a physical condition. And I think the rule in this case is the one from Patterson v. Hughes Aircraft, where the definition of psychiatric illness is not specific, whether you use the language from the insurance certificate or the language from the summary plan description, because it doesn't tell you whether a combined physical and psychiatric condition is subject to the two-year limitation or not. It doesn't distinguish between the two. You're not arguing that the physical condition alone is enough to cause her to be disabled, are you? Well, there's obviously some period of time that the physical condition alone is disabling because she had a cervical fusion. And that obviously got a period of disability associated with it. The first time the plan looked at that, the plan gave her a longer period of disability relating to that. And then, without any real change in the evidence, the plan shortened that time. I'm sorry, she's had 24 months of disability because of a mental condition? Yes, on a mental limitation. And that's what they allowed was the 24 months of that. So that has run out the time for the mental component. Doesn't she then have to show that the physical component caused the longer disability in 24 months? I don't think so, because the question which the insurance company never asked is, what is the relationship of the mental condition to the physical one? And what all the doctors who did address it have said is that the psychiatric condition is related to the physical. In other words, she hit her head twice in 2004. So why does that matter? She gets, for a psychiatric condition, she gets 24 months. And she got her 24 months, so it's not like they said we ignored it. Right. But when she hit her head, she's got a post-concussive syndrome. She's got chronic head pain. She's got a flare-up of C6 radiculopathy. All of that contributes to her disability, both because it is itself partially disabling. Pain is disabling. But pain and depression work together. Well, why doesn't the mental component get subtracted out at this point? Because she's run out of benefits for the psychiatric portion. So you then have to rely on the physical conditions alone, because there's no longer a psychiatric component for which you can get benefits. Because the two years for which benefits were paid, she was suffering from a combined physical and psychiatric condition. If you look at the treating physician, the amount of time that her treating psychiatrist gave her off work is measured in days, weeks, not years. So she got more than that. She got two years, right? Yes. Could you have had a doctor review all of Ms. Lee's medical history and explain for the court why the independent physician consultants were wrong? Sure. But you didn't do that, did you? I certainly did. But I can explain it very quickly. In Dr. Schroeder's opinion, and Dr. Schroeder works four days a week for MetLife, and he says in his report that he agrees with Dr. Lieberman and Dr. Weil. And Dr. Lieberman wrote an 80-page report, and I think we'll find the page that we talk about this in our brief, because I know we did. It says that the claimant presents with a very complicated case and has definitely developed evidence in support of both a cognitive disorder, not otherwise specified, and a depressive order, not otherwise specified. Based upon the data reviewed in my report, however, there's not been evidence of sufficient symptom severity to warrant any total temporary psychiatric disability at any point in time. Unquestionably, however, she's had partial temporary psychiatric disability since June of 2004. And Dr. Schroeder says he did not discuss Dr. Lieberman's opinion with them because he agreed with them. Counsel, may I go back to your very first argument with respect to standard insurance versus Morrison? I notice you didn't cite it in your opening brief, and I now find it on page 24 of your reply brief, but I don't see how that connects with anything. When you look at Article IV of the agreement, and this would be page 126. You cite it to page 126, and you're citing 4A2. Well, doesn't 4.4 control every named fiduciary authority and each person to whom the fiduciary authority shall have an allocator or delegate shall have full and complete discretionary authority with respect to its responsibilities under the plan and any program hereunder? It's pretty broad. Well, actually, the just the insurance policy. Excuse me one second. Excuse me one second. I find that the insurance commissioner of California has somehow ruled this clause inoperative. Well, it is in Docket 55, Exhibit 11, and that's what we cited in our brief. It is the order from 2004 with Commissioner Garamendi ordering the withdrawal of this specific form of policy until they took the discretionary clause out. What page is that in the excelsior record? I'm sorry? What page is that in the excelsior record? It is not in the excelsior record. We cite it to the trial court record. You got about 12 pounds of excelsior record, and you don't include that? Yes. That was in oversight in the preparation of the record. You'll provide it next 24 hours? Yes. I have it here. I can leave it with the clerk. You should. All right. Be sure to have enough copies made before you give it to the clerk so that the court will have copies. I'll do that. So we each have copies. Okay. Thank you. Okay. We'll hear from those five. Good morning, Your Honors. May it please the Court. I'm Rebecca Hull. I represent the appellees in this matter. In this case, the record shows that the defendant plan is a sophisticated and comprehensive employee welfare benefit plan that provides a large array of benefits to thousands of employees. And it clearly has been ---- Are you familiar with the document that counsel referred to? I'm not sure exactly which document he's referring to. He has a copy. He can show it to you. I don't remember any reference to it until he started talking about it today. I'm sorry. I didn't hear you. I don't remember any reference to it in the brief, so I ---- it's not an excerpt, so it was all new. The only reference I found was on page 24 of the reply brief, and all it says is Exhibit 11 to Docket 25, which is not helpful, unfortunately. It's also on page 32 of the opening brief. All right. I see what he's referring to, but I think that the court has anticipated exactly what I'm going to say on this issue, and that is we're not talking about a discretionary provision in an insurance policy. We're talking apples and oranges here. We're talking about a comprehensive and very detailed master plan document that controls all kinds of welfare benefits and that the employer sponsor clearly intends to be uniform as to all forms of benefits, uniform as to all employees, and uniform in terms of how it treats the relationship with the various insurance companies for those benefits that are insured, although not all of them are. And I know of no situation in which the California Insurance Commissioner has purported to regulate in any manner the master plan document that might be adopted by an employer like this. Those are apples and oranges. Those are two different things. And, in fact, it's rather ironic that this argument is being made, I think, because at the same time the appellant's brief points out that there is no discretionary provision in this insurance policy. So how we can have at the same time an insurance policy that does not have a discretionary provision and yet be said to run afoul of the California Insurance Commissioner is... I believe counsel is referring to fiduciaries and fiduciary duty, and in particular Section 4.4, discretionary authority of fiduciary. You heard me read that section back. What's your position with respect to that particular provision? Is the Court talking about Section 4.4 of the master plan document? The welfare benefit plan? Right. My position is that has nothing to do with the California Insurance Commissioner. That is a large employer setting up a comprehensive welfare benefit plan, parts of it insured, parts of it not insured, and trying its best to make sure that everything is uniform as to all employees, including fiduciary responsibility and delegation. And your position is that whatever Commissioner Garamendi did, it had nothing to do with this particular plan. Is that correct? That's exactly correct, Your Honor. Thank you. It just, the two just don't go together. And in fact, it's clear to me reading the master plan document that what the employer was trying to do was avoid patchwork and piecemeal approaches to these issues so that everything is the same for everybody for all sorts of benefits. This is, in fact, I think a... Well, what needs to happen, I guess, why is this short of showing some conflict of interest of some significance? I mean, isn't there an argument being made by the plaintiff that there was a conflict of interest by the administrator here? I'm sure that that argument is being made. Okay. There is a structural conflict which exists as a matter of law under Glenn because you have the same entity both deciding claims and also paying the claims. That's absolutely true. But that is not the end of the discussion. Then under Abatey and its many, many progeny, it's necessary to look at what actually happened. Was this handled appropriately? Were there appropriate communications with the claimant? Was there consideration given to the claimant's interests? Did they look at all the evidence? Did they take account of the evidence? Those are the things that need to happen next. So, yes, there is a structural conflict, but whether it caused the outcome or affected the outcome is a completely separate inquiry. And so only if they showed that they didn't take everything into account or somehow arbitrary and capricious in making their decision, then it's a... Yes. Then it becomes significant. If there is evidence which there are various cases in which that is found to be the case, there are many other cases in which it is not, and it's a very fact-specific and case-specific inquiry. I would like to talk at least briefly about something that's been argued here, which I think has become confusing, to say the least, and that is the concept that it might be significant if there were a physical cause to the depression that was found to exist. Two things. One is the record shows quite clearly that there was a major existing depression requiring intensive treatment in 2003, at least a year, maybe 18 months, before the first accident that we're talking about. The Court can find that reference at Excerpt of Record, page 1528, discussing that. This Ms. Lee was seeing an outpatient psychotherapist four times a week for several months before her first accident. So we're not talking about a condition that only exists because she got hit on the head or fell down or, you know, the two various accidents that she had. We're talking about a preexisting condition that was longstanding and very severe that simply continued. Now, the second thing is that the idea that somehow a relationship between physical and mental was not explored is not accurate either. Dr. Murphy was specifically asked to opine about that, and she did. That discussion can be found at Excerpt of Record, page 1538. She was asked specifically, does the medical information support functional limitations, physical or psychiatric, beyond a certain date? And she went on to discuss that and said that she didn't find physical limitations, but she did find psychiatric ones. Now, I believe what she probably meant by physical limitations was one that precluded working, because it is clear from the employability analysis that there were some restrictions and limitations, but they didn't preclude working. And those are two different things. Yes, there were physical issues. No, they didn't preclude working. She was restricted in things like not lifting above shoulder level, not keeping her neck in the same position for too long, and so on. But those didn't preclude working. So those are really two separate issues. To the extent it's being suggested that there was no physical issue or that the claim administrator said there was no physical issue, that's just not the case. That's not what the record shows. The other thing is that this is not a case like Patterson, where there was an undefined term. The term is defined. It says that the limitation on benefits for a psychiatric disability are triggered by a condition that falls within the current DSM. That is, in fact, exactly the same language that this Court found was unambiguous in Simonia v. Glendale-Nissan. It's exactly the same language. And it is totally different from Patterson. Patterson was open-ended. It didn't say anything one way or the other what it meant. Simonia did. Does DSM contain all causes of mental illness? It's supposed to be, right? I'm sorry? Doesn't the DSM contain all causes for mental illness? Yes, I believe it does. And, in fact, Ms. Lee's briefs cite provisions that talk about the fact that there may very well be an interface between psychiatric and physical causes, leading to a disorder that is, in fact, covered by DSM. And I think that's really the answer to this whole question that's been raised. If somebody falls, has a brain injury that causes psychosis or depression or whatever, that would be something that would be limited by the two-year. It could be. It depends on what you end up with. If you end up with one of the accepted conditions, such as an organic brain disease, then it would not be limited to two years. But that question was examined here, and there was nothing in the records suggesting that there was anything like that. But my point is that the DSM itself contemplates there will be disorders that are covered by the DSM that are both physical and psychiatric or mental in nature, and they are covered by the DSM. So if you're talking about a definition that says a disorder that's within DSM is limited to two years, it doesn't matter whether it was caused or contributed to by a physical condition. It still is covered by DSM, and that's the language that's operative here. So I think the Court hit that directly on the head a little earlier. I had a question. There was a statement that parts of 29 CFR section 2560.5031 seem to try to ensure that the procedures for processing claims are reasonable. And I thought there was a reference in your brief that said that MetLife is processing these claims, but that this regulation does not apply to MetLife. Are you saying it doesn't apply to MetLife? Did I read that correctly? What we said, I believe, I'd have to go back and look to be really clear, but I believe what we were saying was the regulation is directed at plans. The regulation says a plan must have reasonable claim procedures, et cetera. MetLife is not the plan. The plan, in fact, has claim procedures. We pointed those out in our brief. But the plan itself has its own benefit claim procedures in section 6. It goes into great detail about that. So the question of whether there are claim procedures is a question that's directed to the plan. Thank you. Okay. Thank you. Thank you, Your Honor. You have some time left for rebuttal. In Dr. Murphy's first report at ER 1415, he found intermittent depression at specific times as opposed to a continuous impairment from mental illness. His second report, which is what counsel referred to on page 14, I lost the page reference. But he endorsed the findings of Dr. Lieberman, who found this to be a mixed physical and psychiatric condition. What do you say to counsel's argument that it doesn't matter because it's listed DSM, and whether it's a physical cause or mental cause, it doesn't matter. It's a cause that's DSM, and that becomes subject to the 24-month limitation? Well, the DSM diagnosis, for example, which Dr. Kirkson found, is a depression secondary to multiple medical conditions. DSM has psychiatric diagnoses. It also has physical diagnoses that fit into it. I don't think any reasonable person reading a psychiatric limitation would think that a physical illness which caused the subsequent depression or which aggravated it is solely a mental condition. And I think that the cases, and I would go back to Hughes v. Patterson Aircraft, they're not addressing, there's nowhere where they address the difference between an injury which causes psychiatric conditions or a psychiatric condition which causes a disability. And any person who has chronic pain is likely to have some depression. Those two work together. To say anything that is listed in DSM has a two-year limitation is just not how this policy reads, nor is the DSM even mentioned in the summary plan description, which simply refers to psychiatric disabilities. So you've got a conflict between the certificate and the summary plan description as to what it is that the limitation applies to. And simply to say, as it does in the summary plan description, psychiatric disability doesn't meet the standards that this court set out in Hughes. But if I can return briefly to this issue of the insurance policy, Section 14 of the insurance policy at ER 145 says that the policy, that the entire policy is the policy and the application. It is a fully integrated document. And to say that that document can be modified by, once you get past the risk of preemption, which Justice O'Scanlan did with standard insurance versus Morrison, once you say that discretionary clause is within the ambit of state control and the state has said, take it out, you can't put it back in from a plan document because it destroys state regulation of the insurance policy. Thank you. The case is argued and stands submitted.
judges: Kozinski, O'scannlain, Murguia